## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| **MINDA D. WIEDERHOLD,** individually and on behalf of all others similarly situated,<br><br>     **Plaintiff,**<br><br>         v.<br><br>**RES-CARE, INC., d/b/a BRIGHTSPRING HEALTH SERVICES a/k/a NORMAL LIFE, INC.**<br><br>     **Defendant.** | **Case No. 4:24-cv-3** |

## <u>CLASS ACTION COMPLAINT</u>

Minda M. Wiederhold ("Plaintiff") brings this Class Action Complaint against Res-Care, Inc. d/b/a BrightSpring Health Services a/k/a Normal Life, Inc. ("Res-Care" or "Defendant"), individually and on behalf of all others similarly situated. Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

## <u>NATURE OF ACTION</u>

1.      Res-Care is a provider of comprehensive home and community-based health services that serves populations in need of specialized care, and is

1

headquartered at 805 N. Whittington Parkway, Louisville, Kentucky 40222, with more than 50,000 employees in the United States, including in Indiana. For Res-Care employees to maintain health insurance coverage under a Res-Care-sponsored plan, they must declare whether they use nicotine products. Those who do use nicotine products are required to pay an additional fee of up to $50 per month per tobacco user ($600 per year per tobacco user) —hereafter referred to as "nicotine surcharge"—to maintain coverage.

2.      Nicotine surcharges of this sort have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act (ERISA), applied to medical plans by the Patient Protection and Affordable Care Act (ACA), and implementing regulations. Res-Care did not do so, and therefore collected the nicotine surcharge in violation of the law and in violation of its fiduciary duties to plan participants.

3.      More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". And to qualify as a compliant wellness program, a company must offer a "reasonable alternative standard" (for example, a smoking cessation program), by which a participant can receive the program's "full reward"; that is, avoid the surcharge for the *entire* plan year, and must provide notice that such an alternative

exists in every communication regarding the surcharge.

4.     However, at present and over the last six (6) or more years, any Res-Care plan participant that completed the alternative program would only be eligible to avoid *part* of the surcharge that plan year, a fact that was made clear in the company's plan documents providing general information and notice on the nicotine surcharge to plan participants. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Res-Care was and remains unlawful.

5.     Plaintiff is a past Res-Care employee in Indiana who was required to pay the illegal surcharge to maintain health insurance coverage. She brings this lawsuit individually and on behalf of all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

## **PARTIES**

6.     Plaintiff Minda D. Wiederhold resides in North Vernon, Indiana, and is a resident of the State of Indiana. Res-Care hired Wiederhold in approximately October 2011 to work as, in among other roles, as a Site Supervisor for a community-based residential facility in North Vernon, Indiana. Res-Care wrongfully terminated Plaintiff's employment on October 6, 2023.

7.     Since 2011, Plaintiff has been a tobacco user. Plaintiff received health

insurance through Res-Care and signed up as a smoker during open enrollment during her employment at Res-Care. She has paid the company's medical plan's premium and nicotine surcharge within the State of Indiana.

8.     Defendant Res-Care is headquartered at 805 N. Whittington Parkway, Louisville, Kentucky 40222. In this Complaint, "Res-Care" refers to the named Defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain, including BrightSpring Health Services and Normal Life, Inc. Res-Care employed Plaintiff (and many other similarly situated employees) in Indiana

9.     At all times relevant to this lawsuit, Defendant operated one or more medical plans (hereafter referred to as "the plan" or "the Res-Care plan"), which were available for Res-Care employees, retirees, and their dependents. The Res-Care plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

10.     Plaintiff was a "participant" in the plan pursuant to 29 U.S.C. § 1102(7) during the relevant Class Period (January 8, 2018 to time of judgment).

<u>JURISDICTION AND VENUE</u>

11.   This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

12.   This Court has personal jurisdiction over Defendant because it transacts business in this District, resides in this District, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

13.   Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some of the violations of ERISA occurred in this District and Defendant resides and may be found in this District.

14.   In conformity with 29 U.S.C. §1132(h), Plaintiff served the Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## FACTUAL ALLEGATIONS

a.   **Res-Care's Nicotine Surcharge is a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.**

15.   As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act (ACA) amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor," including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42

5

U.S.C. § 300gg-4(b)(1).

16.     On its face, Res-Care's nicotine surcharge violates this provision. Plaintiff and all others similarly situated were required to pay an additional "premium or contribution" of $50 per month per tobacco user based on a "health status-related factor," that being their use of nicotine products. On pay stubs provided to Plaintiff, Res-Care listed the nicotine surcharge as "Tobacco Ee" in the amount of "$25.00" in the section of the pay stub named "Deductions."

17.     Specifically, at all times relevant to this lawsuit, pursuant to Res-Care's medical plan rules, any employee who used any nicotine products, including Tobacco or tobacco-related products (cigarettes (including electronic cigarettes), cigars, pipes and smokeless (tobacco chew), hookahs, vapor devices (vape pens, JUULs, etc.) and clove cigarettes) within six months preceding enrollment in the plan were required to declare themselves to be nicotine users as part of the enrollment process.

18.     As part of its nicotine surcharge, Res-Care requires its employees to complete a required tobacco attestation and self-report tobacco use when the open enrollment in their health insurance plan begins.

19.     According to the annual plan enrollment materials, "[i]f you or your spouse/domestic partner uses or has used tobacco or tobacco-related products including e-cigarettes within the last six months, you will be assessed a $50 monthly

6

surcharge per tobacco user. If you don't use tobacco products, you must act. If you don't attest to be a non-tobacco user, you will be assessed the surcharge."

20.     The annual plan enrollment materials, during the 2019 enrollment period, stated that "[i]f you elect medical coverage for 2020, you must attest to your tobacco status by October 25, 2019 – if you do not make an attestation, you'll be defaulted to a tobacco user for 2020."

21.     The plan enrollment materials also state that "ComPsych will be replacing MHN as our Employee Assistance Program provider. Members will be allotted five in-person sessions free of charge under the new EAP administrator. Enrolling and successfully completing a tobacco cessation program through ComPsych *may help* tobacco users avoid the surcharge." (Emphasis added).

22.     But any adjustments by Res-Care are at best on a *prospective* basis only – there are no retroactive adjustments to the nicotine surcharge. Indeed, the use of the word "may" in plan materials suggests that completing a tobacco cessation program *may not* lead *any* adjustments with regard to the surcharge.

23.     In order to satisfy the requirement to provide a reasonable alternative standard, the same, *full reward* must be available under the wellness program to individuals who qualify by satisfying a reasonable alternative standard (*i.e.*, completing the tobacco use cessation program) as is provided to individuals who qualify by satisfying the program's otherwise applicable standard (*i.e.*, not a tobacco

user).

24.    Res-Care employees attesting to and self-reporting tobacco use for themselves and spouses/partners (and those who did not attest) had to enroll in a tobacco cessation program to lower their medical deduction of $50/month for each tobacco user.

25.    Moreover, a participants' previous year attestation will roll over to the next year if participant does not take action during Open Enrollment.

26.    For a covered, married couple who both smoke, they were charged an additional $100 per month, or $1200 per year, to maintain coverage.

27.    Payment by a couple of the $1200 per year nicotine surcharge was required for Plaintiff and all others similarly situated to remain insured under the Res-Care plan. Plaintiff and all others similarly situated have in fact paid the all or part of this nicotine surcharge.

28.    Res-Care is and has been required to make contributions to the plan to ensure that it remains adequately funded. By collecting the nicotine surcharge, Res-Care has reduced the amount of its own contributions, thereby increasing the company's profits.

29.    At all times relevant to this lawsuit, Res-Care has maintained sole control of the nicotine surcharge program, including by determining which plan participants

are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees are reimbursed, if at all, for the nicotine surcharge.

### b. Res-Care Cannot Avail Itself to ERISA's Safe Harbor for Wellness Programs.

30.     As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention," also known as "wellness programs."  29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

31.     But to qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

32.     Res-Care's nicotine surcharge program did not and does not satisfy the

requirements that it provide a reasonable alternative standard, or that it provide notice of a reasonable alternative standard. As a result, it cannot meet each element of its affirmative defense.

33.     Consequently, Res-Care is not entitled to safe harbor protection for operating a compliant wellness program and its assessment of its nicotine surcharge constitutes unlawful discrimination based on a health status-related factor.

**c.      Res-Care's Nicotine Surcharge Program Did Not Provide for a Reasonable Alternative Standard**

34.     By law, a nicotine surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking) in order to obtain a reward."); *see also id*. at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use").

35.     To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

36.    A common means by which plan administrators attempt to provide reasonable alternative standard to a tobacco surcharge is to permit participants to avoid the surcharge by attending a smoking cessation program.

37.    That is the method Res-Care has attempted to implement this requirement. Its plan information documents make clear that participants *may* eliminate the surcharge going forward by attending a qualifying smoking cessation program.

38.    But for an alternative standard (such as attending a smoking cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard *must* be eligible to avoid the surcharge in its entirety for a given plan year.

39.    The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium*

*discounts for January, February, and March to that individual.*) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

40.     But a Res-Care employee who completed the alternative standard during a given plan year would not be eligible to avoid the entire $1200 couple nicotine surcharge. Instead, either he or she could avoid the surcharge either *on a going-forward basis only* or *not at all*. ("Enrolling and successfully completing a tobacco cessation program through ComPsych *may help* tobacco users avoid the surcharge.") (emphasis added).

41.     Res-Care's plan documents state as much explicitly. Because a plan participant  could not receive a retroactive reimbursement – or any reimbursement at all - to avoid the nicotine surcharge in its entirety, Res-Care's alternative standard does not permit participants to receive the "full reward" and is therefore not a "reasonable alternative standard."

### d.    Res-Care Failed to Provide Notice of Availability of a Reasonable Alternative Standard

42.     Additionally, to be deemed a lawful wellness program, "[t]he plan or

issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program* . . . the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure. 78 Fed. Reg. 33158-01 at 33166.

43.    But multiple Res-Care plan documents discussing the nicotine surcharge do not disclose the existence of a reasonable alternative standard by which it can be avoided.

44.    The 2019 enrollment form states "[e]nrolling and successfully completing a tobacco cessation program through ComPsych *may help* tobacco users avoid the surcharge," but as discussed above this does not establish a reasonable alternative.

45.    The three annual plan enrollment forms from 2020-2022 *provide no notice at all* concerning the impact of completing a tobacco cessation program on the nicotine surcharge for plan participants. There is no information in this document regarding avoiding the surcharge through a reasonable alternative standard.

46.    Plaintiff filled out the required attestations to indicate that she was a tobacco user, but was never provided any information on "how to get started" with the tobacco cessation program.

47.    None of the plan documents provided to Plaintiff in a written form or

13

digitally on the computer disclose a means by which a participant could receive the "full reward" for the plan year.

48.     As a result, the plan documents provide notice of program that, as a matter of law, does not contain a *reasonable* alternative standard.

49.     Res-Care has not complied with the requirement that it provide notice of the availability of a reasonable alternative standard by which a plan participant could avoid the nicotine surcharge and therefore receive the full reward.

## CLASS ACTION ALLEGATIONS

50.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

51.     In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

> All persons in the United States who paid Res-Care's nicotine surcharge in connection with any Res-Care plan at any time from six years prior to the filing of the Complaint to the present.

52.     Excluded from the Class are the Court and its officers, employees and relatives; Res-Care and its subsidiaries, officers, and directors; and governmental entities.

53.     The Class includes tens of thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

54.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant.  Common questions of law and fact include but are not limited to the following:

     a.    Whether Res-Care's nicotine surcharge discriminates against plan participants based on a health status-related factor;

     b.    Whether Res-Care's nicotine surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

     c.    Whether Res-Care can meet every element of its statutory affirmative defense for operating a compliant wellness program;

     d.    Whether Res-Care's offer of enrollment in a smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the full reward of the nicotine surcharge program;

     e.    Whether enrollment in the smoking cessation program would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;

     f.    Whether eliminating the nicotine surcharge on a prospective-only basis, or not at all, allows a participant to receive the full reward of the nicotine surcharge premium differential;

g.    Whether all of Res-Care's plan materials describing the nicotine surcharge give notice of a reasonable alternative standard by which a plan participant may receive the full reward;

h.    Whether a plan document that fails to describe the nicotine surcharge and to note the existence of a smoking cessation program, and does not disclose that enrollment in a smoking cessation program will allow a plan participant to avoid the surcharge gives adequate notice of a reasonable alternative standard;

i.    Whether Res-Care's nicotine surcharge violates the law;

j.    Whether Res-Care's nicotine surcharge violates the terms of the Res-Care medical plan; and

k.    Whether Res-Care breached its fiduciary duties with respect to its collection and retention of the nicotine surcharge.

55.    Plaintiff's claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by Res-Care – its collection of an unlawful surcharge – and are based on the same legal theories.

56.    Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because she was a participant in the Plan during the Class period, has no interest that conflict with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

57.    Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties

by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

58.    Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

59.    Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

60.    The claims brought by the Plaintiff arise from fiduciary breaches as to the Plan in its entirety and does not involve mismanagement of individual accounts.

61.    The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plan.  Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries

whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

62.     Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

63.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**ERISA Statutory Violation – Unlawful Surcharge**
**Failure to Provide a Reasonable Alternative Standard**

64.     Plaintiff restates the above allegations as if fully set forth herein.

65.     To enroll in a Res-Care medical plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $1200 per couple per year.

66.     Res-Care's nicotine surcharge is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

        a. Though the plan allowed a participant an alternative means to avoid *at best part of* the nicotine surcharge by enrolling in a smoking cessation program, doing so did not grant a participant the right to receive the "full reward";

18

b. A nicotine user who enrolled in an authorized smoking cessation program would no longer have the surcharge deducted from his or her pay going forward, but would not be reimbursed for surcharge payments already made during that plan year;

c. A participant who completed the alternative standard during a given plan year would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a $1200 reduction per couple per year in premium costs to maintain medical coverage; and

d. Because a participant could not receive the "full reward," the plan did not provide for a reasonable alternative standard.

71. Res-Care cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

72. Res-Care's nicotine surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

73. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

74. Plaintiffs and class members were required to pay an illegal fee, and Res-Care collected that fee from them in violation of the law. Equity requires that those funds be returned.

### SECOND CLAIM FOR RELIEF
### ERISA Statutory Violation – Unlawful Surcharge
### Failure to Give Required Notice

75. Plaintiff restates the above allegations as if fully set forth herein.

19

76.     To enroll in a Res-Care medical plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $1200 per couple per year.

77.     Res-Care's nicotine surcharge is not and was not a permissible wellness program, because Res-Care did not give statutorily required notice of reasonable alternative standard, in that:

> a. Only one plan document in 2019, an enrollment form, discussed the tobacco surcharge, but did not disclose the availability of an alternative standard—such as a smoking cessation program—by which the surcharge could be avoided;
>
> b. No other plan document addressed the nicotine surcharge, including enrollment forms from 2020-2023. There were no plan documents explaining how the surcharge could be avoided by enrolling in a smoking cessation program; and
>
> c. As a result, Res-Care plan materials described the notice surcharge program without providing adequate notice of reasonable alternative standards by which the surcharge could be avoided.

78.     Res-Care cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

79.     Res-Care's nicotine surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

80.     29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

81.     Plaintiff and class members were required to pay an illegal fee, and Res-Care collected that fee from them in violation of the law. Equity requires that those funds be returned.

### THIRD CLAIM FOR RELIEF
**ERISA Breach of Fiduciary Duty Under**
**ERISA Section 502(a)(2) On Behalf of Plan**

82.     Plaintiff restates the above allegations as if fully set forth herein.

83.     At all times relevant to this lawsuit, Res-Care was the administrator of the Res-Care medical plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the medical plan and disposition of its assets by holding in trust the funds collected from the nicotine surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

84.     Res-Care breached its fiduciary duty by assessing and collecting the nicotine surcharge in violation of the law and in violation of the terms of the plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

85.     Upon information and belief, Res-Care's responsibility with respect to the funding of the plan's claims and administrative expenses relating to the plan's self-funded arrangements equaled the amount by which the plan's claims and administrative expenses exceeded all participant contributions, including the

21

nicotine surcharge funds, Res-Care's collection of the nicotine surcharge diminished the amount Res-Care had to contribute to the plan, thereby benefiting Res-Care and harming the plan.

86.    As a result of the imposition of the tobacco surcharge, Res-Care enriched itself at the expense of the plan, thereby resulting in it receiving a windfall.

87.    Res-Care breached its fiduciary duties under ERISA in that it:

> a.  failed to act solely in the interest of the participants and beneficiaries of the medical plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

> b.  failed to discharge its duties in accordance with the documents and instruments governing the medical plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

> c.  caused the medical plan to engage in transactions that Res-Care knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

> d. dealt with assets of the medical plan in Res-Care's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

> e.  acted on behalf of a party whose interests were averse to the interests of the medical plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

> f.  caused the health plan to require participants to pay a premium of contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the health plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the health plan as a dependent of the individual, in violation of ERISA. *See* 29 U.S.C. § 1182(b).

88.    As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Res-Care

is liable to make good to the plan all losses to the plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

89.    Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**WHEREFORE**, Plaintiff requests the Court enter judgment, both individually and on behalf of all similarly situated employees awarding the following relief:

a.   class action certification of Plaintiff's ERISA claim and an order appointing Walcheske & Luzi, LLC and Hassler Kondras & Miller LLP as class counsel;

b.   requiring Res-Care to reimburse all participants who paid the nicotine surcharge from January 8, 2018, through the present plus interest;

c.   requiring Res-Care to revise any nicotine surcharge Wellness Program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d.   enjoining Res-Care from collecting nicotine surcharges until Res-Care revises its nicotine surcharge Wellness Program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e.   imposing a constructive trust on profits received by Res-Care as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and members of the class can make claims for equitably vested benefits;

f.   requiring Res-Care to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed by it or for which it is liable;

g.   that the Court order Res-Care to provide all accountings necessary to determine the amounts Res-Care must make good to the plan and to plan participants and beneficiaries;

h.   imposing the equitable remedy of surcharge and requiring Res-Care return all funds it derived from the illegal nicotine surcharge;

i.   that the Court surcharge against Res-Care all funds it collected in violation of ERISA and the terms of the plan;

j.   awarding Plaintiff's counsel attorneys' fees and costs consistent with ERISA's fee and cost shifting provisions for the costs of prosecuting this action; and

k.   any further relief that the Court may deem just and equitable.

Dated:  January 8, 2024

Respectfully submitted,

**HASSLER KONDRAS MILLER LLP**

/s/*Robert P. Kondras, Jr.*
Robert P. Kondras, Jr.
100 Cherry Street
Terre Haute, IN 47807
Telephone: 877-656-7602
Facsimile: 812-234-2881
kondras@hkmlawfirm.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

24

*Attorneys for Plaintiff and Proposed Class*