UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

MINDA D. WIEDERHOLD individually and )
on behalf of all others similarly situated, )
                                           )
                        Plaintiff,         )
                                           )
            v.                             )      No. 4:24-cv-00003-SEB-TAB
                                           )
RES-CARE, INC. d/b/a BRIGHTSRPING          )
HEALTH SERVICES,                           )
                                           )
                                           )
                        Defendant.         )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Minda D. Wiederhold ("Ms. Wiederhold") brought this putative class action against her former employer, Defendant Res-Care, Inc. d/b/a BrightSpring Health Services ("Res-Care"),[1] for alleged violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Now before the Court is Res-Care's Motion for Summary Judgment on all claims. Dkt. 28. For the reasons explained below, that motion is **GRANTED**.

**LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment standard requires "no *genuine* issue of

---

[1] For purposes of this order, we shall refer to Defendant as "Res-Care," though the record evidence does contain numerous references to "BrightSpring" as well.

1

*material* fact," meaning that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit," and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. When deciding whether a genuine dispute of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021).

## BACKGROUND

### I.    Overview of ERISA's Nondiscrimination Rules

ERISA contains a nondiscrimination provision prohibiting group health plans, such as that offered by Res-Care, from charging participants with health-status related premiums. *See* 29 U.S.C. § 1182(b). Specifically, § 1182(b)(1) provides as follows:

> A group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, *may not require any individual* (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan *on the basis of any health status-related factor* in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

*Id.* (emphasis added). Paragraph (b)(2)(B), however, creates an exception to this general restriction: It states that "[n]othing in paragraph (1) shall be construed . . . to prevent a group health plan, and a health insurance issuer offering group health insurance coverage, from establishing premium discounts or rebates . . . in return for adherence to programs of

health promotion and disease prevention" (a/k/a "wellness programs"). *Id.* § 1182(b)(2)(B).

Thus, although ERISA bars discrimination, it does not prohibit employers or insurers from offering premium discounts in exchange for participation in a bona fide wellness program.

To meet the requirements of the exception under paragraph (b)(2)(B), a wellness program must adhere to certain statutory requirements. As relevant to the case at bar, such requirements include as follows: "[t]he full reward[2] . . . shall be made available to all similarly situated individuals," meaning that "the wellness program allows . . . for a reasonable alternative standard . . . for obtaining the reward"; and the plan must "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. §§ 300gg-4(j)(1)(C), (j)(3)(D)–(E).[3] "If plan materials disclose that such a program is available, without describing its terms, the disclosure [described herein] shall not be required. *Id.* § 300gg-4(j)(3)(E).

The applicable federal regulations similarly require that "[t]he full reward under [an] outcome-based wellness program[4] must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Regarding notice, "[t]he plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any

---

[2] A "reward" in this context means "a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism, an additional benefit, or any financial or other incentive" as well as avoidance of a penalty (i.e., a surcharge). 29 C.F.R. § 2590.702(f)(1)(i).

[3] Section 2705 of the Public Health Safety Act (the "PHSA"), codified at 42 U.S.C. § 300gg-4, was incorporated into ERISA in 2010. *See* 29 U.S.C. § 1185(d)(a)(1).

[4] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward . . . ." 29 C.F.R. § 2590.702(f)(4)(v). However, "[i]f plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required." *Id.*; *see also* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158-01, 33160 (June 3, 2013) (describing this criteria "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status"). These regulatory guidelines "set forth criteria for an affirmative defense that" plans and issuers may invoke "in response to a claim that a plan or issuer discriminated under the [applicable] nondiscrimination provisions." Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. at 33160.

## II.    The Parties

Res-Care is a home- and community-based health services enterprise that serves individuals in need of specialized medical care. Ms. Wiederhold worked at Res-Care for approximately twelve years from October 2011 through October 2023. Ernst Decl. ¶ 8, dkt. 30-1 (Declaration of Shannon Ernst). At all times relevant to this litigation, Ms. Wiederhold has been a tobacco user. Wiederhold Dep. 13:6–14, dkt. 30-12. During Ms. Wiederhold's employment tenure, she participated in Res-Care's health benefit plan (the "Plan"), which is administered by Shannon Ernst ("Ms. Ernst"), Res-Care's Senior Director of Benefits and Human Resources Compliance, and Kristi Reid ("Ms. Reid"), Res-Care's Vice President of Total Rewards and Human Resources Conformity. Reid Dep. 61:1–3, dkt. 31-3 at 25.

### III.    October 2019 Open Enrollment

Every October, Res-Care held open enrollment for the following year's benefits pro-grams, including the Plan. When open enrollment began in October 2019, Ms. Wiederhold and others were informed of a change in the Plan's eligibility requirements: to wit, effective January 1, 2020, the Plan assessed a monthly surcharge of either $50 or $100 for employees and their spouses/domestic partners who had used tobacco products within the previous six months (hereinafter the "tobacco surcharge"), amounting to $600 (per individual) or $1,200 (per couple) in healthcare premiums every year.[5] *E.g.*, dkt. 30-2 at 4 (2020 enrollment cat-alogue); Wiederhold Dep. 25:13–21, dkt. 30-12. Mses. Ersnt and Reid implemented the tobacco surcharge with the goal of "promot[ing] a healthy lifestyle [and] provid[ing] in-centives for not using tobacco." Ernst Dep. 87:3–7, dkt. 31-1 at 24.

Under a heading entitled "Medical plan changes," the 2020 benefits catalogue de-scribed the new tobacco surcharge as follows:

> Employees and spouses/domestic partners enrolled in a medical plan MUST complete a required tobacco attestation and self-report tobacco use. If you or your spouse/domestic partner uses or has used tobacco or tobacco-related products including e-cigarettes within the last six months, you will be as-sessed a $50 monthly surcharge per tobacco user. If you don't use tobacco products, you must act. If you don't attest to be a non-tobacco user, you will be assessed the surcharge.

Dkt. 30-2 at 5. Under a section about "new vendors," the 2020 benefits catalogue also referenced, albeit in passing, that "ComPsych will be replacing MHN as our Employee Assistance Program provider. . . . Enrolling and successfully completing a tobacco

---

[5] The parties' submissions occasionally refer to the tobacco surcharge as the "nicotine surcharge." For sake of clarity, we shall use the term "tobacco surcharge."

cessation program through ComPsych may help tobacco users avoid the [tobacco] sur-charge." *Id.*

Notice of the tobacco surcharge was incorporated into additional enrollment materials, including, *inter alia*, a presentation about the 2020 Plan that was accessible to Res-Care employees electronically as well as through the human resources department. *See, e.g.*, dkt. 30-4. Likewise, when accessing the open enrollment webpage, employees were "immediately" required to respond to a tobacco usage question before proceeding to their selection of a health insurance plan. Wiederhold Dep. 43:23–44:18, dkt. 30-12; dkt. 30-7. The tobacco attestation form directed enrollees to indicate "yes" or "no" to whether they had "used tobacco products any time in the last six months." Dkt. 30-7; *accord* Wiederhold Dep. 25:14–16, dkt. 30-12. The attestation form also made a passing reference to tobacco cessation assistance, stating, "Need a resource to help with tobacco cessation? Contact BrightSpring's EAP program for information." Dkt. 30-7.

The tobacco surcharge was prorated and deducted directly from employees' paystubs on a biweekly basis, resulting in a $25 (or $50) deduction per pay period. According to Ms. Wiederhold's deposition testimony, she discovered the tobacco surcharge in January 2020 when she reviewed her first earnings statement of the new year and saw the $25 deduction expressly noted therein. Wiederhold Dep. 34:7–14, 49:5–13, dkt. 30-12.[6] She

---

[6] During her deposition, Ms. Wiederhold gave conflicting responses to questions about when and how she learned of the tobacco surcharge: At one point, she testified that a tobacco attestation was "one of the first questions on the [open enrollment] page," meaning that, by the fall of 2019, she understood "[t]hat we would be charged an extra $25 per paycheck because we were a smoker . . . ." Wiederhold Dep. 25:13–21, dkt. 30-12. Ms. Wiederhold also stated that the tobacco surcharge "was not explained to [her]" at the time of open enrollment. *Id.* at 33:19–34:3. Ms.

relayed, "I realized [the tobacco surcharge] when I got my check stub for my first check in January of 2020. I was, like, they're charging me because I'm a tobacco user. . . . I wasn't going to contest it [because] I had to have insurance . . . ." *Id.* at 34:10–14.

Ms. Wiederhold testified at her deposition that she would generally "skim over" the benefits materials, such as the 2020 enrollment catalogue, though she maintains that she did not read the specific language referring to a tobacco cessation program and that Res-Care never advised her about how she could avoid the tobacco surcharge. *Id.* at 27:1–8, 34:25–35:2, 51:5–52:20, 53:21–54:2, dkt. 30-12.

## IV.   The Plan's Claims Procedure

The Plan provides for an administrative claims and appeals procedure for participants to raise eligibility- and benefits-related claims, which procedures have remained unchanged since 2020. Under the Plan, an "eligibility" claim is defined as "a claim to participate in the benefits offered under the Plan or to change an election to participate during the year." Dkt. 30-10 at 47 (2020 Summary Plan Description); dkt. 30-11 at 58 (2023 Summary Plan Description). "Examples of eligibility claims include claims regarding whether you are enrolled in the correct benefit option, or claims related to whether you properly enrolled a dependent." Dkt. 30-10 at 47; dkt. 30-11 at 58. All such claims "must be filed within 90 days after the end of the plan year to which the claim relates." Dkt. 30-10 at 47; dkt. 30-11 at 58.

---

Wiederhold's testimony shifted once more when she recalled that, in the fall of 2019, she was informed that she was "going to be charged an extra $25 per paycheck for being a tobacco user." *Id.* 41:17–19. For purposes of summary judgment, we regard January 2020 as the latest point at which Ms. Wiederhold gained actual knowledge of the tobacco surcharge.

Prior to initiating this litigation, Ms. Wiederhold did not challenge the tobacco surcharge through Res-Care's eligibility (or benefits) claims procedures. Weiderhold Dep. 50:17–22, dkt. 30-12. Ms. Ernst explained in her declaration that "[a]ny challenge to the right to participate or the conditions of participating in the Plan, such as the need to pay participant contributions, including but not limited to any challenge to paying the tobacco surcharge, would be subject to th[e] [eligibility claims] procedures," Ernst Decl. ¶ 7, dkt. 30-1, though we recognize that Ms. Wiederhold challenges the availability of such administrative recourse.

## V.    This Litigation

On January 8, 2024, Ms. Wiederhold filed this putative class action lawsuit challenging the lawfulness of the tobacco surcharge, pursuant to 29 U.S.C. §§ 1104, 1106, and 1182(b). Ms. Wiederhold alleges the tobacco surcharge violates the nondiscrimination provision set forth in § 1182(b) by imposing a premium on Plan participants based on their health status. In a three-count complaint, Ms. Wiederhold asserts that Res-Care failed to provide a reasonable alternative standard for obtaining the full reward (Count I); that Res-Care failed to provide adequate notice of a reasonable alternative standard (Count II); and that Res-Care breached its fiduciary duties by collecting the tobacco surcharge for its own benefit and at the detriment of Plan participants, in violation of 29 U.S.C. §§ 1104(a)(1), 1106(a)(1), and 1182(b). Pursuant to § 1132(a), Ms. Wiederhold seeks monetary reimbursement for all participants who paid the tobacco surcharge as well as a court order enjoining Res-Care from further collection of the tobacco surcharges, unless and until such program is brought into compliance with ERISA, imposing a constructive trust on Res-Care's profits

8

emanating from its alleged fiduciary breach, and requiring Res-Care to disgorge its unjust enrichment, among other things.

On September 6, 2024, Res-Care moved for summary judgment, seeking the entry of judgment in its favor on all claims. Dkt. 28. Res-Care's motion is fully briefed and ripe for ruling.[7]

## DISCUSSION

Res-Care's summary judgment motion raises several grounds to support the dismissal of Ms. Wiederhold's claims: First, Res-Care argues that the statute of limitations has lapsed, rendering this lawsuit untimely. Second, Res-Care contends that Ms. Wiederhold's failure to exhaust her administrative remedies precludes her from bringing suit. Third, Res-Care asserts that it was not operating in a fiduciary capacity when it administered and managed the tobacco surcharge program, and that Ms. Wiederhold's status as former employee who was terminated for cause renders her ineligible to recover for any alleged fiduciary breach. Insofar as Ms. Wiederhold prevails on her claims, Res-Care argues that ERISA does not permit the equitable remedies sought be Ms. Wiederhold.

## I.    The Statute of Limitations

ERISA "suits must be filed within one of three time periods, each with different triggering events," though only two are relevant to this litigation. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 180 (2020). "The first begins when the [fiduciary] breach

---

[7] On October 23, 2024, Ms. Wiederhold filed a surreply brief, asserting that Res-Care relied upon new evidence in its reply brief. Dkt. 34. On October 27, 2024, Res-Care objected to Ms. Wiederhold's surreply. Dkt. 35. Because we ultimately do not reach the legal issues outlined in Ms. Wiederhold's surreply, we need not resolve Res-Care's objection thereto.

occurs." *Id.* "Specifically, under § 1113(1), suit must be filed within six years of 'the date of the last action which constituted a part of the breach or violation' or, in cases of breach by omission, 'the latest date on which the fiduciary could have cured the breach or violation.' " *Id.* (quoting 29 U.S.C. § 1113(1)). This six-year deadline for filing suit is the "presumptive limitation period for violations of ERISA . . . ." *Su v. Johnson*, 68 F.4th 345, 355 (7th Cir. 2023) (citation modified).

"The second period, which accelerates the filing deadline, begins when the plaintiff gains 'actual knowledge' of the breach" or violation. *Sulyma*, 589 U.S. at 181 (quoting 29 U.S.C. § 1113(2)). In such circumstances, the limitation period "is shortened to just three years from the time that the plaintiff gained '*actual knowledge* . . . .' " *Johnson*, 68 F.4th at 355 (citation modified) (alteration in original). This shortened period "encourage[s] plaintiffs to pursue diligent prosecution of known claims." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 504 (2017) (citation modified).

In this case, the parties advance contradictory views about the appropriate limitation period. Res-Care contends that Ms. Wiederhold gained actual knowledge of the alleged ERISA violation—to wit, imposition of the tobacco surcharge—in January 2020, which knowledge triggered the three-year limitation period. Because Ms. Wiederhold initiated this litigation nearly four years later, in January 2024, Res-Care asserts that this lawsuit is untimely. Ms. Wiederhold, by contrast, argues that the six-year limitation period applies because Res-Care's allegedly unlawful "tobacco surcharge program continues to this day

10

without proper notice and without a reasonable alternative standard . . . ." Dkt. 31 at 13.[8]

Alternatively, Ms. Wiederhold argues that she did not obtain actual knowledge of her "right to file a lawsuit under ERISA to recover unlawfully deducted tobacco surcharges until she hired a lawyer shortly before she filed her lawsuit in January 2024 and learned about the non-compliant tobacco cessation program." *Id.* at 5 n.3, 13.

Ms. Wiederhold avers, and Res-Care does not contest, that imposition of the tobacco surcharge on Plan participants constitutes a prima facie violation of ERISA's anti-discrimination provision set forth in § 1182(b). Compl. ¶¶ 15–16, dkt. 1; Def.'s Br. 17, dkt. 29; Pl.'s Br. 6, dkt. 31. Likewise, the parties agree that whether Res-Care's tobacco surcharge program qualifies as a lawful wellness program under § 1182(b)(2)(B) and its implementing regulations applies to elements of Res-Care's affirmative defense. Compl. ¶¶ 31–32, 54(c), 71, 78, dkt. 1; Def.'s Reply Br. 1–4, dkt. 32; Pl.'s Br. 8, dkt. 31. Additionally, there is no dispute that Ms. Wiederhold had actual knowledge of the tobacco surcharge by January 2020, nor that she discovered the existence of a tobacco cessation program (irrespective of its purported (non)compliance with ERISA) shortly before initiating this suit in January 2024. Def.'s Br. 13, dkt. 29; Pl.'s Br. 5 n.3, dkt. 31.

Although ERISA does not define the term "actual knowledge," the Supreme Court has recently explained that "§ 1113(2) begins only when a plaintiff actually is aware of the *relevant* facts, not when [s]he should be." *Sulyma*, 589 U.S. at 187 (emphasis added);

---

[8] That said, Ms. Wiederhold's brief in opposition to summary judgment also cites record evidence revealing that Res-Care has since modified its implementation of the tobacco surcharge as well as the tobacco cessation program. *See* Pl.'s Br. 10–11, dkt. 31.

*accord Johnson*, 68 F.4th at 356 ("The three year statute of limitations applies only when the plaintiff has actual knowledge of the violation, not when the plaintiff arguably should have known of the violation."). "To charge [a] plaintiff with actual knowledge of an ERISA violation, it is not enough that [s]he had notice that something was awry; [s]he must have had specific knowledge of the actual breach of duty upon which [s]he sues." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992) (citation modified). "[I]t is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality," though she "must know of the essential facts of the transaction or conduct constituting the violation." *Id.* Ultimately, whether a plaintiff has obtained "the requisite knowledge of an ERISA violation . . . turn[s] in part on the complexity of the underlying factual transaction, the complexity of the legal claim[,] and the egregiousness of the alleged violation." *Id.* "Beyond [these] generalizations, however," the Seventh Circuit has advised district court judges to "make the determination" with due regard to the "particular contexts" of a case as well as their "situation sense." *Id.* (citation modified).

In light of these legal principles, we must first properly characterize the alleged ERISA violation in order to determine which facts comprise the essential components of Ms. Wiederhold's claims. As described above, § 1182(b) prohibits plans from requiring individuals to pay health-status related premiums than those paid by similarly situated individuals, unless such premium is avoidable through adherence to a bona fide wellness program. *See* 29 U.S.C. § 1182(b). A violation of ERISA's nondiscrimination rule is, in turn, relatively straightforward: a plan unlawfully discriminates on the basis of a health

factor when it requires participants to meet a health-related standard in order to avoid a premium charge.

Regarding the case at bar, we find that the "essential facts . . . of the conduct constituting the violation" include Res-Care's imposition of the tobacco surcharge, the avoidance of which was attainable only by achieving a health-based outcome (e.g., tobacco cessation). *Martin*, 966 F.2d at 1086. Accordingly, Ms. Wiederhold's knowledge of the $50 monthly tobacco surcharge, which she could not avoid unless she stopped smoking and indicated as much on her annual tobacco attestation form during open enrollment, *see* dkt. 30-7, was sufficient to apprise her of the facts relevant to Res-Care's alleged ERISA violations. Thus, because Ms. Wiederhold had "actual knowledge" of the tobacco surcharge, she necessarily had "specific knowledge" of the discriminatory premium about which she sues. *Martin*, 966 F.2d at 1086. Likewise, Ms. Wiederhold's own averments further buttress our conclusion, since she, too, alleges that the tobacco surcharge constitutes a *prima facie* violation of § 1182(b), notwithstanding the possibility that Res-Care might avail itself of the wellness program affirmative defense, pursuant to paragraph (b)(2)(B) and related regulations. Pl.'s Br. 6, 8, dkt. 31.

Nevertheless, Ms. Wiederhold rejoins that she "did not gain actual knowledge of the breach concerning the lack of a reasonable alternative standard"—that is, a way to avoid the tobacco surcharge—"until she learned about the existence of the non-compliant tobacco cessation program shortly before she filed this action on January 8, 2024." *Id.* at 13. In our view, this argument conflates "knowledge of . . . illegality" with knowledge of "the essential facts" of a violation, only the latter of which bears on our assessment of the applicable

statute of limitations. *Martin*, 966 F.2d at 1086. Indeed, Ms. Wiederhold's assertion that she "did not know she had a right to file a lawsuit under ERISA . . . until she hired a lawyer" further supports our conclusion that any delay in initiating this litigation resulted from ignorance of the law—not of the pertinent underlying facts. Dkt. 31 at 5 n.3.

Nor has Ms. Wiederhold persuaded us that knowledge of the tobacco cessation program's existence was essential to the core violation at issue. To the contrary, the absence of any ostensible wellness program (here, the tobacco cessation program) further establishes the factual predicate of an actionable § 1182(b) claim based on a discriminatory premium. Thus, that Ms. Wiederhold, with the assistance of learned counsel, subsequently discovered additional legal inadequacies in Res-Care's tobacco surcharge and cessation program does not convince us that she previously lacked actual knowledge of the facts giving rise to the alleged ERISA violation.

At bottom, the undisputed record evidence establishes that Ms. Wiederhold gained actual knowledge of the facts essential to her claim in January 2020, thereby triggering the start of the three-year statute of limitations under § 1113(2). Because Ms. Wiederhold did not initiate this lawsuit until January 2024, approximately one year after the three-year deadline, the statute of limitations renders her claims untimely. Accordingly, Res-Care's motion for summary judgment shall be **granted**.

## CONCLUSION

For the foregoing reasons, Res-Care's Motion for Summary Judgment is hereby **GRANTED** based on the expiration of the three-year statute of limitations. Dkt. 28. Because Ms. Wiederhold obtained actual knowledge of the facts essential to the alleged

14

ERISA violations more than three years before filing suit, this action is untimely. 29 U.S.C.

§ 1113(2). Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date:

_____3/31/2026_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Mark Douglas Hassler
Hassler Kondras Miller LLP
hassler@hkmlawfirm.com

Bart A. Karwath
BARNES & THORNBURG, LLP (Indianapolis)
bart.karwath@btlaw.com

Robert Peter Kondras, Jr.
HASSLER KONDRAS MILLER LLP
kondras@hkmlawfirm.com

Alejandra Reichard
BARNES & THORNBURG, LLP (Indianapolis)
alejandra.reichard@btlaw.com

Paul M Secunda
Walcheske & Luzi LLC
psecunda@walcheskeluzi.com

T. Joseph Wendt
Barnes & Thornburg LLP
jwendt@btlaw.com